**NOT FOR PUBLICATION**                                        **CLOSED**

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY

_____
                                        :
CARL JACOBS,                            :
                                        :
                    Petitioner,         :
        v.                              :       CIVIL ACTION NO. 04-0397 (JAP)
                                        :
TERRY MOORE, Administrator,             :
New Jersey State Prison, and            :
PETER C. HARVEY, Attorney General       :
of New Jersey,                          :       **OPINION**
                    Respondents.        :
_____:

APPEARANCES:

Carl Jacobs, Pro Se
#231563
East Jersey State Prison
Lock Bag R
Rahway, NJ 07065

Peter C. Harvey, Esq.
Attorney General of New Jersey
Adrienne Reim, Esq.
Deputy Attorney General
Division of Criminal Justice
Appellate Bureau
P.O. Box 086
Trenton, New Jersey 08625
        Attorneys for Respondent

PISANO, District Judge.

Pro se Petitioner, Carl Jacobs, filed the within petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254 (2006). Respondents have filed an answer to the petition accompanied by relevant portions of the state court record.[1] The Court has considered all submissions. For the following reasons, the Court denies the petition.

## I.    Factual History

On March 26, 1994, Petitioner, along with Nathaniel Troupe and Howard Caesar engaged in an armed car-jacking and series of armed robberies which resulted in injury to several persons, including a police officer. The specific facts of this case were recounted below and this Court, affording the state court's factual determinations the appropriate deference, see 28 U.S.C. § 2254(e)(1), will rely on the Appellate Division's factual findings:

> In the early evening hours of March 26, 1994, [Carl Jacobs, Nathaniel Troupe, and Howard Caesar] began their night of violence by stealing George Cheek's 1990 white Mustang automobile. Cheek testified that another automobile, containing four individuals, pulled up to the driver side of his car. The passenger pointed a gun at Cheek's head and ordered him to exit from the Mustang. A rear seat passenger of the other car then alighted from the vehicle, put a gun to Cheek's head and relieved him of his money. The two armed men, who Cheek later identified as Troupe and Caesar, drove off in the stolen car followed by the other automobile.
>
> Shortly after this incident, Alterique Poole was accosted by three men who pulled up to him in Cheek's automobile. All three of the men brandished handguns. One of the men shot Poole in the chest. Severely wounded, Poole attempted to escape but was shot again in his arm and leg. Poole later identified Troupe, Jacobs and Caesar as the assailants.
>
> Sandra Bernard and Daniel Cleveland were seated in an automobile in front of Bernard's house when they were attacked by five men in a white automobile. Three of the men were armed with handguns. One of the men stole Bernard's pocketbook. Although neither Bernard nor Cleveland was able to identify the assailants, Bernard's

---

[1] Petitioner named Terry Moore, whom Petitioner claims is the Administrator of New Jersey State Prison, as a Respondent. It appears that Mr. Moore was the administrator of East Jersey State Prison, where Petitioner is incarcerated, not New Jersey State Prison. The current administrator of East Jersey State Prison is Alfaro Ortiz. The current Attorney General of the State of New Jersey is Zulima Farber.

pocketbook was later found in Cheek's automobile which, by that time, had been abandoned.

Richard Holmes was sitting on the porch of his home when a white Mustang occupied by four men pulled up to the curb. Two armed men suddenly alighted from the vehicle and demanded Holmes's money. When Holmes hesitated, one of the men, who Holmes recognized as Caesar, shot him. Agnes Halsey and Rasheeda Turner were standing nearby when their attention was drawn by the gunfire. Halsey attempted to escape, but was wounded. Turner was merely grazed. Halsey identified Caesar as one of the gunmen.

Maxi Dormevil was about to enter his parked car when a white Mustang pulled up and two men, brandishing handguns, approached him. One of the men, who Dormevil identified as Troupe, held a gun to his head while searching his pockets for money. The men then drove off in the Mustang.

Shunda Alston, Tanya Alston, and Lakesha Boone were the next victims. While walking along the street, their attention was drawn to a white Mustang that pulled up to the curb. Two of the occupants, later identified as Troupe and Caesar, exited the car brandishing guns. Caesar grabbed Boone, put the gun to her head, and threatened to "bust a cap in [her] ass." Troupe held a gun to the Alstons, while relieving them of their valuables. The men then drove off in the Mustang.

At approximately 11:30 p.m., a security guard observed four men abandon a white Mustang in the middle of the street. The men then stole an Acura Vigor. Although the security guard could not identify the thieves, he immediately reported the incident to the police. Officer [Darrel][2] Major was on routine patrol when he spotted the stolen automobile. At the same time, two other patrol cars appeared at the scene. The Acura was blocked in both directions. Using a loudspeaker, Officer Major directed the occupants of the stolen vehicle to raise their hands and turn off the ignition. Instead, the driver of the Acura put the car in reverse and rammed into Officer Major's patrol car, pinning Officer Major between the body of his car and the front door. The Acura sped off, with several police cars in hot pursuit. During the chase, several of the occupants of the Acura jumped out of the vehicle and attempted to escape. Caesar, the driver, was apprehended by Officer Gary Baker. Other officers apprehended Jacobs and two juveniles in the back seat of the Acura. Officer Barry Baker captured Troupe after a brief chase.

State v. Jacobs, RE3 at 4-6.[3]

After the suspects were arrested, George Cheek, Shunda Alston, Tanya Alston, and

Lakesha Boone identified Troupe and Caesar as two of the participants in the robberies. Maxi

---

[2]  Although the Appellate Division identifies the officer as "Thomas Major," a review of the record in this case indicates that the officer's name is "Darrel Major."

[3]  References to "RE#" are citations to items in the record as submitted by Respondents.

Dormevil identified Troupe, but could not identify either Jacobs or Caesar as participants in the robbery.  Alterique Poole identified Troupe and Caesar as the gunmen and Jacobs as the driver after being shown polaroid photographs of the five suspects arrested in connection with the incidents of March 26, 1994.  Id. at 6-7.

## II.    Procedural History

Carl Jacobs was indicted by an Essex County Grand Jury on thirty-two counts relating to the events of March 26, 1994.  From approximately April 27, 1995 through June 6, 1995, Jacobs was tried by a jury in the Superior Court of New Jersey, Law Division, Essex County (the "Law Division").  He was tried together with co-defendants Troupe and Caesar.  The jury convicted Jacobs of:

> (1) first degree attempted murder of Alterique Poole (count five);
> (2) second degree robbery of Richard Holmes, Shunda Alston, Tanya Alston, and Lakesha Boone (counts sixteen, twenty, twenty-one, and twenty-two);
> (3) second degree aggravated assault of Alterique Poole (count six);
> (4) third degree aggravated assault of Richard Holmes and Officer Darrel Major (counts thirteen and nineteen);
> (5) third degree possession of a weapon, a 1992 Acura automobile, for an unlawful purpose (count thirty);
> (6) fourth degree possession of a weapon, a 1992 Acura automobile, with the purpose to use it unlawfully against the person of Officer Darrel Major (count thirty-one); and
> (7) third degree theft by receiving stolen property, a 1992 Acura automobile (count thirty-two).

State v. Jacobs, RE1 at DA34-43.  Petitioner was acquitted of counts one, two, three, four, seven, eight, nine, ten, eleven, twelve, seventeen, eighteen, twenty-three, twenty-four, twenty-five, twenty-six, twenty-seven, and twenty-eight.  Id.  The jury could not reach a verdict on counts fourteen, fifteen, and nineteen.[4]  Id.  The Honorable Leonard D. Ronco, J.S.C., sentenced Jacobs

---

[4]  Respondents provide conflicting recitations of Petitioner's convictions in paragraphs four (page two) and twelve (page nineteen) of its answer.  A review of the jury's verdict form

4

to fifty-eight years imprisonment with a mandatory minimum of nineteen years and eight months. He is currently serving his sentence at East Jersey State Prison, Rahway, New Jersey.  See Jacobs Habeas Petition at 1-2.

Petitioner sought exhaustive review of his conviction.  First, Jacobs filed a direct appeal with the New Jersey Superior Court, Appellate Division (the "Appellate Division") which affirmed Petitioner's conviction in an opinion on January 23, 1998.  Jacobs then filed a petition for certification with the Supreme Court of New Jersey which was denied on May 21, 1998.

Jacobs subsequently filed a petition for post-conviction relief in the Law Division on July 10, 1998.[5]  The court denied Jacobs's petition for post-conviction relief.  Jacobs appealed the denial of his petition for post-conviction relief in the Appellate Division, which affirmed the denial of the petition on March 27, 2002.  Jacobs subsequently filed a petition for certification with the Supreme Court of New Jersey, which was denied on January 28, 2003.  The instant petition followed.

## III.   Legal Discussion

Petitioner asserts the following grounds for habeas relief:  (1) his due process rights were violated because of prosecutorial misconduct; and (2) his due process rights were violated because ineffective assistance of counsel at trial and on appeal contributed to him being convicted largely on the testimony of one witness.  Jacobs also claims in his habeas petition, without providing any further detail, that he is "actually innocent" of the crimes of which the jury

---

indicates that the statement of Petitioner's convictions is accurately stated in paragraph twelve of the answer.  See State v. Jacobs, RE1 at DA34-43.

[5]  A petition for post-conviction relief in New Jersey is the state's analogue to a federal petition for a writ of habeas corpus.  See, e.g., State v. Precise, 609 A.2d 1280, 1284 (N.J. 1992).

convicted him.  The Court cannot adjudicate this claim because claims of actual innocence are not cognizable on federal habeas review absent an independent constitutional violation.  See Herrera v. Collins, 506 U.S. 390, 400, 404 (1993).[6]

Pursuant to 28 U.S.C. § 2254, a district court shall consider an application for habeas relief filed by a person "in custody pursuant to the judgment of a State court only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States."  28 U.S.C. 2254(a). Before discussing the merits of the instant petition, the Court addresses Respondent's arguments that (1) Jacobs's petition is barred by the one year statue of limitations set forth in 28 U.S.C. § 2244(d); (2) the petition should be dismissed because Jacobs failed to

---

[6]  A petitioner's actual innocence is only relevant to the extent that the petitioner seeks habeas relief on a potentially meritorious claim which the federal habeas court cannot hear because of a procedural bar. See id. at 404 ("But this body of habeas jurisprudence makes clear that a claim of 'actual innocence' is not itself a constitutional claim, but instead a gateway through which a habeas petitioner must pass to have his otherwise barred constitutional claim considered on the merits."); Lambert v. Blackwell, No. 01-2511, 2003 WL 1718511, at *33 (E.D. Pa. Apr. 1, 2003) ("While a freestanding claim of actual innocence is not cognizable in federal habeas review, innocence is relevant where a petitioner seeks relief on a potentially meritorious claim that faces a procedural bar.").

Because the Court finds that Petitioner's ineffective assistance of counsel and prosecutorial misconduct claims are not procedurally barred, see section III.B, Petitioner's bare allegation of actual innocence is irrelevant.  Even if Petitioner's claims are procedurally barred, Petitioner provides no basis for his bare assertions of actual innocence.  See Correa v. Carroll, No. 03-897, 2004 WL 1822123, at *5 (D. Del. Aug. 13, 2004) (finding that petitioner's conclusory and unsupported allegations of actual innocence were insufficient to excuse procedural default of his claims); Brown v. Dragovich, No. 96-5549, 1997 WL 338936, at *3 (E.D. Pa. June 17, 1997) (holding that procedurally defaulted claims were not excused by bare assertion of actual innocence).

Further, to the extent that Petitioner's claims of actual innocence rely on the independent constitutional violations allegedly inherent in Petitioner's ineffective assistance of counsel and prosecutorial misconduct claims, the validity of such claims are discussed in section III.C.  Cf. Schlup v. Delo, 513 U.S. 298, 315 (1995) (stating that petitioner's claim of innocence does not by itself provide a basis for habeas relief, however, his claim depends on the validity of his constitutional claims of ineffective counsel and prosecutorial misconduct).

exhaust his state court remedies; and (3) Jacobs's claims are barred by the procedural default doctrine.

**A.     Statute of Limitations**

Respondents argue that the instant petition is untimely pursuant to 28 U.S.C. § 2244(d)(1).  The Anti-Terrorism and Effective Death Penalty Act of 1996 (the "AEDPA"), 28 U.S.C. § 2244,  amended section 2254 by, among other things, providing for a one year statute of limitations on the filing of federal habeas petitions.  See 28 U.S.C. § 2244(d)(1); Stokes v. District Attorney of the County of Philadelphia, 247 F.3d 539, 541 (3d Cir. 2001).  In this case, the statute of limitations began to run on the date that the Supreme Court of New Jersey denied Jacobs's petition for certification of the Appellate Division's denial of his petition for post-conviction relief.  See 28 U.S.C. § 2244(d)(1)(A); see also Stokes, 247 F.3d at 542-43 (holding that the one year statute of limitations pursuant to section 2244(d)(1) is not tolled during the ninety day time period in which a state prisoner may file a petition for certiorari in the United States Supreme Court challenging the denial of his state post-conviction petition).

The exact date on which the Supreme Court of New Jersey denied Jacobs's petition for certification is unclear.  Although the court's order denying the petition for certification was filed on January 30, 2003, the order was dated January 28, 2003.  See State v. Jacobs, RE20. However, the Court need not determine whether the limitations period began to run on January 28, 2003 or January 30, 2003 because Jacobs's petition is timely no matter which of these dates the Court applies.

Pursuant to the "prison mailbox rule," a habeas petition is deemed filed on the date the prisoner delivers it to prison officials for mailing, not on the date the petition is ultimately filed with the court.  See Houston v. Lack, 487 U.S. 266, 270-71 (1988); see also Burns v. Morton,

134 F.3d 109, 112-13 (3d Cir. 1998) (applying prison mailbox rule set forth in <u>Houston</u>, which dealt with filing of an appeal, to a pro se prisoner's filing of a habeas petition).  Although the Court is unable to determine from the face of the petition the exact date that Jacobs handed his petition to prison officials for mailing, Jacobs signed the petition on January 20, 2004.  <u>See</u> <u>Henderson v. Frank</u>, 155 F.3d 159, 163-64 (3d Cir. 1998) (using date prisoner signed petition as date he handed it to prison officials for purposes of calculating timeliness of habeas petition).  Accordingly, the Court finds that Jacobs necessarily delivered the petition to prison officials for filing prior to January 28, 2003 and thus, the petition was timely filed.

**B.     Exhaustion of State Court Remedies and
            the Procedural Default Doctrine**

The exhaustion and procedural default doctrines are often confused because they operate in tandem to protect the integrity and independence of state judicial systems.  First, pursuant to the exhaustion doctrine, a federal court shall not *grant* a writ of habeas corpus on behalf of an individual in custody pursuant to a state court judgment unless "the applicant has exhausted the remedies available in the state courts."  28 U.S.C. § 2254(b)(1).  In order to exhaust state court remedies, a habeas petitioner must show that he "fairly presented" his claims to the state courts by "invoking one complete round of the State's established appellate review process."  <u>Carpenter</u> <u>v. Vaughn</u>, 296 F.3d 138, 146 (3d Cir. 2002) (quoting <u>O'Sullivan v. Boerckel</u>, 526 U.S. 838, 844-45 (1999)).[7]

If a habeas petitioner has not "fairly presented" his claims to the state courts and it is still

---

[7]  In <u>Carpenter</u>, the court applied the pre-AEDPA version of section 2254 because Carpenter filed his habeas petition before the AEDPA went into effect.  <u>Carpenter</u>, 296 F.3d at 149 n.12.  This does not affect the court's thorough discussion of the exhaustion and procedural default doctrines as they relate to this matter.

possible for him to raise those claims in a state court proceeding, the claim is unexhausted.  See, e.g., 28 U.S.C. § 2254(c) ("An applicant shall not be deemed to have exhausted the remedies available in the courts of the State, within the meaning of this section, if he has the right under the law of the State to raise, by any available procedure, the question presented."); Carpenter, 296 F.3d at 146 (stating that a habeas claim is unexhausted where petitioner has not fairly presented the claim in state court and it remains possible for him to do so).  If the state law clearly forecloses review of a claim which has not been fairly presented to the state courts, a federal court entertaining a habeas petition will hear the claim despite petitioner's failure to fairly present the claim in state court, unless the claim is procedurally defaulted.  See 28 U.S.C. § 2254(b)(1)(B)(I); Carpenter, 296 F.3d at 146.

         A procedural default occurs when a habeas petitioner's federal claim is "barred from consideration in the state courts by an 'independent and adequate' state procedural rule."  See, e.g., Carpenter, 296 F.3d at 146.  A habeas claim is procedurally defaulted where the last state court judgment on the claim fairly appears to rest primarily on resolution of federal law and does not clearly and expressly rest on a state procedural bar.  Coleman v. Thompson, 501 U.S. 722, 734-35 (1991); see also Harris v. Reed, 489 U.S. 255, 266 (1989) (holding that habeas claim was not procedurally defaulted where state court did not clearly and expressly rely on procedural bar as ground for rejecting the claim).  If a claim is procedurally defaulted, a federal court may only entertain such claim on habeas review if the petitioner shows either cause to excuse the default and prejudice resulting from the default or that a fundamental miscarriage of justice will result should the federal court fail to hear petitioner's claim.  See, e.g., Coleman, 501 U.S. at 750

         Given these principals, the Court first holds that Petitioner's claims of prosecutorial misconduct and ineffective assistance of counsel have been exhausted.  Jacobs conclusorily

claims in his habeas petition that his trial was tainted by prosecutorial misconduct and that his trial counsel was ineffective which caused him to be convicted largely on the testimony of one witness at trial.  His pleading technically violates the requirements set forth in Rule 2 of the Rules Governing Section 2254 cases because he fails to specify the legal grounds for relief and the factual basis underlying such grounds.[8]  However, considering Petitioner's pro se status, the Court will construe his petition liberally, see, e.g., Haines v. Kerner, 404 U.S. 519, 520 (1972), and will consider his prosecutorial misconduct and ineffective assistance of counsel claims as he presented such claims in his direct appeal and petition for post-conviction relief in the state courts.[9]  Accordingly, the Court finds that Petitioner exhausted his claims as his habeas claims were in fact the claims he pursued on direct review and in post-conviction proceedings.[10]

Petitioner claimed in his direct appeal that his due process rights were violated because (1) the prosecutor engaged in misconduct because he made certain inappropriate comments during summation; and (2) trial counsel was ineffective for failing to object to these comments during the trial.  See State v. Jacobs, RE1 at 28-30, 41-44.  Petitioner raised the following

---

[8]  Although Jacobs states in his petition that he will submit a memorandum of law in support of his petition, no such memorandum has been filed on the record or otherwise received by the Court.

[9]  The Court does not consider various claims made by Petitioner in his pro se supplemental brief in support of his petition for post-conviction relief.  See State v. Jacobs, RE9.  The Law Division found that these claims were without merit.  See State v. Jacobs, RE40 at 15-17.  When Petitioner appealed the Law Division's findings, he did not appeal the court's determinations regarding these claims.  See State v. Jacobs, RE12; RE18.  Thus, the Court presumes that Petitioner did not intend to pursue such claims in the instant petition.

[10]  The Court notes that pursuant to 28 U.S.C. § 2254(b)(2), it has the authority to deny a habeas petition on the merits even if a petitioner failed to exhaust the remedies available to him in state court.  28 U.S.C. § 2254(b)(2) ("An application for a writ of habeas corpus may be denied on the merits notwithstanding the failure of the applicant to exhaust the remedies available in the courts of the State.").

ineffective assistance of counsel claims in his petition for post-conviction relief:  (1) trial counsel was ineffective for failing to advise Jacobs of his right to testify and appellate counsel failed to raise this issue on appeal; and (2) trial counsel was ineffective for failing to investigate potential alibi witnesses.[11]  See State v. Jacobs, RE12 at 16-26; RE18 at 6-12.

The Court holds that Petitioner's prosecutorial misconduct and ineffective assistance of counsel claims as presented above are not procedurally barred.  The last state court judgments on Petitioner's claims were made by the Appellate Division in its opinions affirming Petitioner's conviction on direct appeal and denying post-conviction relief.[12]  The Appellate Division rendered the last state court judgment on Petitioner's prosecutorial misconduct and ineffective assistance of counsel claims raised on direct appeal.  In its opinion, the Appellate Division affirmed Petitioner's conviction solely on the merits.  See State v. Jacobs, RE3.  Thus, the Court may adjudicate those claims on habeas review.

Furthermore, with respect to Jacobs's post-conviction petition, although the Law Division

---

[11]  Petitioner also claimed in his appeal of the Law Division's denial of his petition for post-conviction relief that prior post-conviction relief counsel was ineffective for failing to investigate potential alibi witnesses.  See State v. Jacobs, R12 at 25-26.  The Court does not consider this claim for two reasons.  First, in his petition, Jacobs only asserts that trial and appellate counsel's errors contributed to him being convicted largely on the testimony of one witness.  See Jacobs Habeas Petition at 4.  Also, a claim that post-conviction relief counsel was ineffective is not cognizable in a section 2254 proceeding.  See 28 U.S.C. § 2254(i) ("The ineffectiveness or incompetence of counsel during Federal or State collateral post-conviction proceedings shall not be a ground for relief in a proceeding arising under section 2254."); Harvey v. Aviles, No. 04-5418, 2006 WL 624891 (D.N.J. Mar. 10, 2006) (holding that habeas petitioner was not entitled to relief on claim that post-conviction relief counsel was ineffective).

[12]  Although the Supreme Court of New Jersey denied Jacobs's petitions for certification in both his direct appeal and petition for post-conviction relief after the Appellate Division reached its decisions, the court merely denied the petitions without any explanation.  Accordingly, the last explained judgments were from the Appellate Division.  See, e.g., Shahid v. Moore, No. 02-6107, 2005 WL 2338859, at *3 (D.N.J. Sept. 23, 2005).

cited both state procedural and federal law grounds for denying Jacobs's petition for post-conviction relief, the Appellate Division expressly affirmed the Law Division's decision on the merits of Petitioner's constitutional claims.  The Appellate Division stated:  "[p]utting aside the procedural basis for denying defendant's petition, we affirm the Law Division's order essentially for the reasons expressed by Judge Vichness in his oral opinion rendered on December 8, 2000."  See State v. Jacobs, RE15 at 3.   The court went on to give a discussion of the merits of Petitioner's claims of ineffective assistance of counsel based on counsel's failure to advise Petitioner of his right to testify and failure to investigate potential alibi witnesses.  Thus, the Appellate Division's opinion fairly appears to rest primarily on the resolution of federal law and the claims are not procedurally defaulted.

## C.      **Merits of the Petition**

Respondents claim that Jacobs's petition for habeas relief is without merit.  Section 2254(d) sets forth the standard for granting or denying a writ of habeas corpus.  The statute reads as follows:

> (d) An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim –
>
> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

The Supreme Court discussed the application of section 2254(d)(1) in Williams v. Taylor, 529 U.S. 362 (2000).  In Williams, the Court analyzed subsection one as two clauses:  the

"contrary to" clause and the "unreasonable application" clause.  See Williams, 529 U.S. at 405-08; see also Fischetti v. Johnson, 384 F.3d 140, 147-48 (3d Cir. 2001) (analyzing requirements of section 2254(d)(1)).  The Court held that under the "contrary to" clause, a federal court may grant habeas relief if the state court arrives at a conclusion opposite that reached by the Supreme Court on a question of law or if the state court decides a case differently than the Supreme Court has on a set of materially indistinguishable facts.  Williams, 529 U.S. at 405; Fischetti, 384 F.3d at 147-48.  With respect to the "unreasonable application" clause, the Court held that a federal court may only grant habeas relief if the state court's application of clearly established federal law is objectively unreasonable.  Williams, 529 U.S. at 409; Fischetti, 384 F.3d at 148.

In determining whether to grant habeas relief under section 2254(d)(2), a federal court must examine the evidence in the record and assess the reasonableness of the state court's factual determinations.  The court is required to apply a presumption of correctness to factual determinations made by the state court, which may only be overcome by clear and convincing evidence.  See 28 U.S.C. § 2254(e)(1); Duncan v. Morton, 256 F.3d 189, 196 (3d Cir. 2001).  Further, federal habeas courts ordinarily refrain from revisiting credibility determinations made by state courts.  See Sanna v. Dipaolo, 265 F.3d 1, 10 (1st Cir. 2001) ("[I]t would be wholly inappropriate for a federal court to repastinate soil already thoroughly plowed and delve into the veracity of the witnesses on habeas review.").

Following is a discussion of the merits of Petitioner's prosecutorial misconduct and ineffective assistance of counsel claims.

### 1.       Prosecutorial Misconduct

Petitioner's due process rights were not violated by certain comments made by the

prosecutor during his closing argument.  Petitioner claims that the prosecutor improperly accused

co-defendant Howard Caesar's defense counsel, Mr. Kirk Rhodes, of trying to intimidate the

jury.  In this regard, the prosecutor specifically stated in closing:

> Somebody is telling you to think about your family being here is trying to intimidate you from doing your job.  The last thing he said was you find them guilty, or they [sic] will be a problem in your life.
>
> Somebody who is telling you that, if you find these facts to be true, there is going to be a problem is trying to intimidate you.
>
> . . . .
>
> And if somebody is trying to intimidate you, don't come back with a certain verdict or something will happen to you, I ask you to hold onto your courage.

State v. Jacobs, RE34 at 83:5-11, 97:2-4; RE1 at 30.

Petitioner also claims that the prosecutor gave improper statistical opinions in closing

argument about the odds that several eyewitnesses would identify the three defendants, Jacobs,

Troupe, and Caesar out of several photo arrays when he stated:

> [I]t was eight identifications, correct identifications, out of forty-eight.  Now what are the odds of that.  If some of you know odds, its better than me, you tell me.  I know what the odds of picking six out of six, six out of forty-six.  What are the odds of picking two more numbers in that Pick Six.  Eight of you had a better chance of hitting the Pick Six than you do with these identifications.

State v. Jacobs, RE34 at 99:23-100:5; RE1 at 30.

The Appellate Division, in its opinion affirming Petitioner's conviction on direct appeal, stated,

"while we do not endorse all of the comments made by the prosecutor in his summation, we find

no error capable of producing an unjust result. . . . By and large, the prosecutor's remarks were

fairly supported by the evidence, and constituted legitimate arguments."  See State v. Jacobs,

RE3 at 16.  The Court agrees with the Appellate Division's findings.

14

When a prosecutor's opening or closing remarks are challenged in a habeas petition, "[t]he relevant question is whether the prosecutor's comments 'so infected the trial with unfairness as to make the resulting conviction a denial of due process.' " Darden v. Wainwright, 477 U.S. 168, 181 (1986) (quoting Donnelly v. DeChristoforo, 416 U.S. 637, 643 (1974)).  In determining the likely effect of improper comments, a court may consider whether the comments were responsive to or invited by prior comments made by opposing counsel.  Darden, 477 U.S. at 181-82.  Accordingly, in analyzing whether a due process violation occurred, the court must examine the prosecutor's comments "in context and in light of the entire trial, assessing the severity of the conduct, the effect of the curative instructions, and the quantum of evidence against the defendant."  Moore v. Morton, 255 F.3d 95, 107 (3d Cir. 2001).

In this matter, the prosecutor's comments did not "so infect the trial with unfairness" to constitute a denial of Petitioner's due process rights because the comments were directly responsive to arguments made by defense counsel, the court's jury instructions cured any improper comments, and the quantum of evidence against Jacobs was significant.

First, the prosecutor's comments were directly responsive to arguments made by defense counsel at trial.  Defense counsel for Jacobs's co-defendant, Howard Caesar, stated in his summation that the jurors should think about themselves and their own families and that if a juror convicted Caesar, he would "have a problem for the rest of [his] life."  State v. Jacobs, RE34 at 50:16-51:20, 79:9-10.  The prosecutor's statements that the jury should not be intimidated by the defense and should have the courage to perform their civic duty were in direct response to defense counsel's arguments.  It was reasonable for the prosecutor to address defense counsel's argument and focus the jury on the evidence in the case.

15

Second, defense counsel for all three co-defendants, Jacobs, Troupe, and Caesar, all argued that the eight victims who collectively identified the defendants were mistaken.  In response to this argument, the prosecutor urged the jury to use their common sense to evaluate the accuracy of the witness identifications by posing a rhetorical question regarding statistical odds.  This was a reasonable comment and clearly not some type of extraneous statistical opinion.

In any event, even if the prosecutor's comments were improper, the trial judge gave a curative instruction which emphasized that summations were not evidence and that the jury is the trier of the facts in the case:

> Now counsel have in their opening and closing statements commented on the evidence.  Their comments on the evidence are not binding in any sense upon you because it is the exclusive function of the Jury to decide what the facts are.  In their summations they were merely presenting an argument to you based on their recollection of what the testimony was.

State v. Jacobs, RE35 at 7:11-17.

Additionally, in light of the trial as a whole, the quantum of evidence presented against Petitioner was significant.  The Appellate Division  emphasized that the evidence against Jacobs was overwhelming and that the trial record "reeked" of Jacobs's guilt.  See State v. Jacobs, R3 at 4. This Court agrees.  The record indicates that Alterique Poole, one of the victims, identified Jacobs as being inside the white Mustang during his shooting.  State v. Jacobs, RE27 at 102:10-18; A witness saw the occupants of the Mustang abandon the car and enter a stolen Acura.  See State v. Jacobs, RE31 at 43:22-41:21;  Jacobs was in the Acura when it was apprehended by police, shortly after the Acura rammed into Officer Major's patrol car.  State v. Jacobs, RE31 at 128:3-129:1.  Howard Caesar testified that Jacobs was a participant in the theft of the Acura.

16

State v. Jacobs, RE33 at 10:1-10, 22:17-19.

Therefore, Petitioner has not demonstrated that the determinations of the Appellate Division were contrary to or involved an unreasonable application of clearly established federal law or resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in state court.  Accordingly,  the Court finds that the prosecutor's allegedly improper comments in summation did not violate Petitioner's due process rights.

### 2.        Ineffective Assistance of Counsel

Petitioner's claims of ineffective assistance of counsel are also unfounded.  The Supreme Court announced the standard for reviewing a claim of ineffective assistance of counsel in Strickland v. Washington, 466 U.S. 668 (1984).  In order to establish ineffective assistance of counsel, the Petitioner must show that (1) counsel's performance was deficient in that "counsel made errors so serious that counsel was not functioning as 'counsel' guaranteed . . . by the Sixth Amendment; and (2) that counsel's deficient performance prejudiced the defendant.  Strickland, 466 U.S. at 687.  The performance inquiry under Strickland focuses on whether "counsel's assistance was reasonable considering all the circumstances."  Id. at 688.  Moreover, there is a strong presumption that counsel has provided reasonable professional assistance which Petitioner must overcome.  Id. at 689. To show prejudice, the Petitioner must demonstrate a "reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different."  Id. at 694.

With regard to appellate counsel, the Supreme Court has held that the Due Process Clause of the Fourteenth Amendment guarantees a defendant the effective assistance of counsel on a first direct appeal of right.  Evitts v. Lucey, 469 U.S. 387, 396-97 (1985).  Claims of ineffective

17

assistance of appellate counsel are evaluated under the <u>Strickland</u> standard discussed above.  <u>See</u> <u>Lewis v. Johnson</u>, 359 F.3d 646, 656 (3d Cir. 2004); <u>Wright v. Vaughn</u>, No. 00-3822, 2004 WL 1687865, at *6 n.10 (E.D. Pa. July 26, 2004).  Appellate counsel does not have a duty to advance every non-frivolous argument that could be made, <u>see</u> <u>Jones v. Barnes</u>, 463 U.S. 745, 754 (1983), but a petitioner may establish that appellate counsel was constitutionally ineffective "if he shows that counsel omitted significant and obvious issues while pursuing issues that were clearly and significantly weaker."  <u>Mayo v. Henderson</u>, 13 F.3d 528, 533 (2d Cir. 1994).

The Appellate Division found that none of counsels' alleged errors were so serious that counsel was not functioning as constitutionally guaranteed counsel and further, that due to the overwhelming evidence of Petitioner's guilt, any deficiencies in counsel's performance did not prejudice the Petitioner.  The Court agrees.

First, counsel was not deficient for failing to object to certain comments made by the prosecutor in his closing argument to the jury.  As indicated with specificity in section III.C.1.a. above, the prosecutor made comments relating to Caesar's defense counsel's efforts to intimidate the jury and the statistical odds that the witnesses' identifications of the defendants were incorrect.  The Appellate Division found that the prosecutor's statements were legitimate arguments for summation and found that there was "no reasonable likelihood that had counsel interposed timely objections the result might have been different."  <u>See</u> <u>State v. Jacobs</u>, RE3 at 16.  The Court agrees.  A prosecutor is entitled to respond to defense counsel's arguments in his summation.  <u>See, e.g.</u>, <u>State v. Johnson</u>, 670 A.2d 1100, 1109 (N.J. Super. Ct. App. Div. 1996) ("A prosecutor may respond to an issue or argument raised by defense counsel.").  As discussed above, the prosecutor's comments were in direct response to comments made by defense counsel

18

in their summations.  Further, the Court issued a jury instruction indicating that counsel's closing arguments were not evidence.  Accordingly, the Court finds that the failure of Jacobs's defense counsel to object to such comments was reasonable under the circumstances.

Second, counsel was not deficient because she allegedly failed to advise Petitioner of his right to testify in his own defense at trial.  In his petition for post-conviction relief, Jacobs claims that he told his trial attorney that he wanted to testify and "was told that he could not." See State v. Jacobs, RE8 at 17.  He claims that if he were permitted to testify, he would have told the jury that he did not commit the crimes and would have cast suspicion on Alterique Poole's identification of him as one of the perpetrators. See State v. Jacobs, RE8 at 18.  The Appellate Division found that counsel acted reasonably in this regard because Petitioner had an extensive criminal record which would have been introduced to impeach his credibility at trial. See State v. Jacobs, RE15 at 5.   The court further noted that Petitioner's claims of ignorance as to his right to testify were not entirely credible, stating, "it is inferable from his extensive record that [Petitioner] harbored more than a passing familiarity with trial procedure." State v. Jacobs, RE15 at 5.  The Appellate Division also found that the trial court engaged in a "lengthy colloquy" with Jacobs "in which his right not to testify was exhaustively explored." Id.; State v. Jacobs, RE34, at 3:3-5:20.   Accordingly, the Appellate Division found that his testimony would not have changed the result of his trial.

Although the Court is not privy to what counsel and Petitioner discussed during their privileged conversations, the Court agrees that given Petitioner's criminal history and the Court's instructions, Petitioner understood his right to either testify on his own behalf or remain silent. The Court also agrees that it was a reasonable trial strategy for counsel not to put Petitioner on

19

the witness stand given the likelihood that his testimony would be impeached by his criminal

history.  See, e.g., State v. Hicks, 661 A.2d 1300, 1302 (N.J. Super. Ct. App. Div. 1995) (stating

that ordinarily, evidence of prior convictions is admissible to impeach a criminal defendant's

credibility).  Thus, the Court finds that counsel's performance in this regard was reasonable

under the circumstances.  Accordingly, appellate counsel's failure to raise this issue on appeal

was also reasonable.

Third, counsel was not deficient for failing to investigate potential alibi witnesses.  In his

post-conviction petition, Jacobs claims that counsel was ineffective because she failed to

properly investigate certain witnesses who could have provided him with an alibi.  Petitioner

asserts that during the robberies, he was with a friend called "Snap" (a/k/a/ Abdul Johnson),

Snap's father (Castordell Johnson), and a person called "Sambo (a/k/a Shaquelle Reed)." See

State v. Jacobs, RE8 at 18-19.  The Appellate Division found that "[t]he record clearly reveals

that Abdul Johnson, his father Castordell Johnson, and 'Sambo' were interviewed prior to trial,

and that their accounts were found to be deleterious to defendant's case."  State v. Jacobs, RE15

at 4.  The court found that a composite of these purported alibi witnesses' accounts actually

placed Jacobs near the scene of the crimes shortly before they were committed.  Id.

Petitioner has failed to provide any evidence which suggests that trial counsel did not

investigate these potential witnesses or that Abdul Johnson, Castordell Johnson, or Shaquelle

Reed would have provided any information favorable to his defense.  The Court's own review of

the record indicates that Abdul Johnson or "Snap" was interviewed prior to Petitioner's trial.  See

State v. Jacobs, RE13 at PA59.[13]  Shaquelle Reed or "Sambo" also appears to have been interviewed by trial counsel.  See id. at PA65.  Petitioner has provided no reason for the Court to question trial counsel's strategical decision not to use these individuals as witnesses for the defense at trial.

It is unclear whether Castordell Johnson was interviewed prior to trial; however, the Court defers to the Appellate Division's factual findings in this regard.  See 28 U.S.C. § 2254(e)(1).  Even if Castordell Johnson was not interviewed prior to trial, on September 8, 2000, he indicated to an investigator for the Essex County Prosecutor's Office, Bernardo Serra, that he dropped Jacobs off no later than 9:00 pm on March 26, 1994, and accordingly, was not with Jacobs when the incidents in question began, which, according to the police report, was 10:05 pm.  See State v. Jacobs, RE13 at PA130-31; RE15 at 14:11-18.[14]  Thus, any failure by trial counsel to interview Castordell Johnson prior to trial did not prejudice Jacobs because he did not provide Jacobs with an alibi for the incidents in question.

Furthermore, when discussing counsel's performance on behalf of Jacobs, it is important to point out the various efforts that counsel expended in vigorously defending her client.  The

---

[13] Abdel Johnson was also interviewed by Michael Petrillo, an investigator from the Essex County Public Defender's Office, on July 18, 2000, see State v. Jacobs, RE13 at PA60-64, and by Bernardo Serra of the Essex County Prosecutor's Office on September 11, 2000, see id. at PA130-31.

[14] George Cheek testified that the incidents began at approximately 9:30 pm.  See State v. Jacobs, RE26 at 55:8-10.  Even if Mr. Cheek is correct and the incidents began at 9:30 pm as opposed to 10:05 pm, Mr. Johnson's testimony still does not establish an alibi for Petitioner because he left Petitioner's company at 9:00 pm.  Further, Petitioner was not convicted of any crimes with respect to Mr. Cheek.  Instead, the first crime that Petitioner was convicted of was the attempted murder and aggravated assault of Alterique Poole which happened after Mr. Cheek was car-jacked.

record reflects that defense counsel made a series of pretrial motions, objected to evidence, diligently cross-examined witnesses, participated in the jury charges, and made an impassioned summation.  The record further reflects that counsel attacked Alterique Poole's credibility by suggesting that he was a drug user who could not have made a positive identification of Jacobs. See State v. Jacobs, RE34 at 24:22-25.  She presented a viable theory that Petitioner had only stolen the Acura, in which he was apprehended, but had not been present for the more serious crimes. See id. at 23:18-29:1.  Although this theory did not result in a wholesale acquittal of Jacobs, the jury acquitted Jacobs of eighteen counts in the indictment and could not reach a verdict on three other counts.  Given trial counsel's performance, appellate counsel performed reasonably by not accusing trial counsel of the various deficiencies suggested by Petitioner.

Additionally, the Court finds that even if counsel's performance was deficient, Petitioner has not shown that he was prejudiced by such errors.  As stated above, the Appellate Division emphasized that the evidence against Jacobs was overwhelming and that the trial record "reeked" of Jacobs's guilt.  See State v. Jacobs, R3 at 4. As discussed in section III.C.1 above, this Court agrees that the evidence presented establishes Petitioner's guilt on the counts of which he was convicted.

Thus, based on the foregoing, the Court finds that Petitioner has not shown that the Appellate Division's findings on Petitioner's ineffective assistance of counsel claims were contrary to clearly established federal law, involved an unreasonable application of clearly established federal law, or involved an unreasonable determination of the facts in light of the evidence presented.  Accordingly, Petitioner's claims for habeas relief based on ineffective assistance of counsel are denied.

**IV.**     <u>**Conclusion**</u>

In conclusion, for the reasons stated above, the instant petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254 is denied.  The Court further finds that no certificate of appealability will issue because Petitioner has not made a substantial showing of the denial of a constitutional right as required by 28 U.S.C. § 2253(c)(2).  An appropriate order accompanies this opinion.

DATED: 18th of May, 2006                          _____s/ Joel A. Pisano_____

                                                                         JOEL A. PISANO, U.S.D.J.

_____